Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| MUNICIPIO DE SAN LORENZO  Apelante  v.  CARLOS PORFIRIO MARTÍNEZ ZAYAS Y OTROS  Apelada | TA2026AP00507 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas  Caso Núm.: SL2025CV00401  Sobre: Expropiación Forzosa |
|---|---|---|

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2026.

Comparece el Municipio de San Lorenzo (en adelante, Municipio o parte apelante) mediante *Recurso de Apelación,* para solicitarnos la revisión de la *Sentencia* emitida el 28 de abril de 2026, y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Caguas.[1] Mediante la *Sentencia* apelada, el foro de instancia declaró *Ha Lugar* la petición de expropiación forzosa y ordenó el traspaso de la propiedad a favor de este, condicionada al pago de una justa compensación por la cantidad de $49,473.63 dólares.

Por los fundamentos que expondremos, se *desestima* el recurso incoado por falta de jurisdicción.

I

El 17 de octubre de 2025, el Municipio de San Lorenzo representado por su Alcalde, Jaime Alverio Ramos, instó una *Petición* contra Carlos Porfirio Martínez Zayas; la sucesión de Carlos Porfirio Martínez Zayas; el Estado Libre Asociado de Puerto Rico –

---

[1] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 27.

Centro de Recaudación de Impuestos Municipales (CRIM); John Doe, y Richard Doe (en adelante, parte apelada) sobre expropiación forzosa.[2] Sostuvo la necesidad de adquirir una propiedad inmueble ubicada en la Calle Eugenio Sánchez López del Municipio de San Lorenzo (la propiedad), en virtud de Ley del 12 de marzo de 1903;[3] la Regla 58 de las Reglas de Procedimiento Civil;[4] el Código Municipal de Puerto Rico,[5] la Ley Núm. 114-2024[6] y la Ordenanza Municipal Núm. 33-OT, Serie Núm. 2020-2021. El Municipio estimó que la compensación justa y razonable que se debía pagar por la propiedad era la suma de $78,300.00 dólares. Sin embargo, adujo que, conforme a la Sección 5 de la Ley General de Expropiación Forzosa,[7] procedía descontarse la cantidad de $7,277.00 dólares en concepto de gastos administrativos en labores de limpieza y mantenimiento; $26,954.10 dólares en concepto de deuda, intereses, recargos y penalidades de la propiedad con el CRIM y $25,000.00 dólares en concepto de multas por impuestas por el Municipio.

El 17 de octubre de 2025, tuvieron lugar varias incidencias procesales. El Municipio instó *Moción en solicitud para que se expida emplazamiento*, mediante la cual incluyó como anejos cuatro (4) formularios de emplazamientos personales dirigidos a las partes con interés.[8] De lo anterior, el tribunal de instancia emitió una *Orden* para su expedición.[9] Asimismo, se remitieron los *Emplazamientos* expedidos.[10] Luego, el 20 de octubre de 2025, el foro primario emitió

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] *Ley General de Expropiación Forzosa,* Ley de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.*
[4] Regla 58 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 58.
[5] Ley 107-2020, según enmendada, 21 LPRA sec. 7001 *et seq.*
[6] Ley Núm. 114-2024.
[7] Ley de 12 de marzo de 1903, *supra*, 32 LPRA sec. 2906.
[8] SUMAC TPI, a la Entrada Núm. 2.
[9] *Íd.*, a la Entrada Núm. 3.
[10] *Íd.*, a las Entradas Núm. 4-7.

una *Orden* contra John Doe y/o Richard Roe ordenando su emplazamiento.[11]

Compareció el Municipio nuevamente, el 21 de noviembre de 2025, mediante *Moción para que se resuelva la moción para la adquisición y entrega material de la propiedad presentada conjuntamente con la presente petición de expropiación forzosa.*[12] Solicitó al foro primario que se le entregase el Título provisional sobre la propiedad de epígrafe y proveyese para su entrega y posesión material. En respuesta, mediante *Resolución* emitida el 24 de noviembre de 2025, el foro primario ordenó que se inscribiese el título de pleno y absoluto dominio sobre la propiedad a favor del Municipio de San Lorenzo.[13] Conviene puntualizar que el foro de instancia ordenó que dicha *Resolución* fuese notificada por conducto de los alguaciles a las partes con interés. Puntualizamos que no pudimos constatar del expediente judicial que esta gestión hubiese sido realizada.

Por su parte, el 8 de enero de 2026, compareció el Municipio mediante *Moción informativa sobre diligencias de emplazamiento personal.*[14] Adujo que, tras varias diligencias vigorosas y honestas para localizar al señor Martínez Zayas, titular registral de la propiedad en controversia, estas fueron infructuosas. Asimismo, compareció mediante *Moción para que se dicte orden de emplazamiento por edicto, conforme a la Regla 58.4(C)(2).*[15] Solicitó al foro primario que ordenase que las partes con interés de epígrafe fuesen emplazadas por edicto conforme a la Regla 58.4 de las de Procedimiento Civil.[16] Conforme lo anterior, el 12 de enero de 2026, el foro primario emitió *Orden Emplazamiento por Edicto.*[17] Se

---

[11] SUMAC TPI, a la Entrada Núm. 8.
[12] *Íd.*, a la Entrada Núm. 12.
[13] *Íd.*, a la Entrada Núm. 13.
[14] *Íd.*, a la Entrada Núm. 14.
[15] *Íd.*, a la Entrada Núm. 15.
[16] 32 LPRA Ap. V, R. 58.4.
[17] SUMAC TPI, a la Entrada Núm. 17.

desprende que debía emplazarse por edicto a todos los que componen la parte apelada. El emplazamiento por edicto fue expedido el 12 de enero de 2026.[18]

Así las cosas, mediante *Orden* emitida el 9 de enero de 2026, y notificada el 12 del mismo mes y año, el tribunal de instancia anotó la rebeldía al CRIM.[19]

Posteriormente, el 26 de marzo de 2026, el Municipio instó *Moción informativa sobre cumplimiento de emplazamiento por edicto*, donde adjuntó en lo pertinente: (i) la declaración jurada del periódico El Nuevo Día, acreditando que el edicto fue publicado los días 22 y 29 de enero de 2026, así como el 5 de febrero de 2026; (ii) acuse de recibo con fecha del 20 de marzo de 2026, con la finalidad de acreditar la notificación a las partes con interés; y (iii) copia de los ejemplares de edicto publicados.[20]

En respuesta, mediante *Orden* emitida y notificada el 26 de marzo de 2026, el foro de instancia dispuso que no se daba por emplazada la parte con interés por incumplimiento con el procedimiento para así hacerlo.[21] Por otro lado, concedió término al Municipio para someter evidencia sobre los gastos administrativos en labores de limpieza y mantenimiento en que hubiese incurrido. Además, le requirió una certificación del CRIM y que aclarara el propósito de la expropiación peticionada, así como si había un tercer adquirente interesado en la propiedad en cuestión.

Con la finalidad de cumplir, el 14 de abril de 2026, el Municipio presentó una *Moción en cumplimiento de orden.*[22] Esgrimió que estaría publicando nuevamente el emplazamiento por edicto a modo de cumplir con las Reglas en cuanto a la notificación. En síntesis, presentó evidencia sobre las gestiones de limpieza y

---

[18] SUMAC TPI, a la Entrada Núm. 18
[19] *Íd.*, a la Entrada Núm. 16.
[20] *Íd.*, a la Entrada Núm. 22.
[21] *Íd.*, a la Entrada Núm. 23.
[22] *Íd.*, a la Entrada Núm. 24.

mantenimiento en la propiedad; la deuda del CRIM; y aclaró el propósito de la expropiación forzosa. Solicitó se diera por cumplida la *Orden* del 26 de marzo de 2026.

De lo que sigue, mediante *Orden* emitida y notificada el 14 de abril de 2026, el tribunal de instancia ordenó al Municipio a consignar la cuantía de $25,473.63 dólares, en concepto de justa compensación, para lo cual concedió treinta (30) días.[23] Expresó, además que, contrario a lo alegado en el pliego, los gastos de mantenimiento y limpieza ascendieron a $1,000.00 dólares.

En desacuerdo, el 28 de abril de 2026, el Municipio presentó una *Moción de reconsideración*.[24] Adujo que debía reconsiderarse lo ordenado a los fines de que el Municipio no tenía un deber de consignar el justo valor hasta tanto compareciera al litigio la parte con interés, a tenor con el Artículo 2.018 del Código Municipal de Puerto Rico en su inciso 10.[25]

Así las cosas, el 28 de abril de 2026, notificada al día siguiente, el tribunal de instancia emitió la *Sentencia* apelada.[26] Mediante este dictamen, el foro primario declaró *Ha Lugar* la *Petición* de expropiación forzosa presentada por el Municipio y ordenó el traspaso de la propiedad en cuestión, a favor de este, luego de la consignación de la justa compensación, determinada en $49,473.63 dólares. En la *Sentencia*, el tribunal apelado consignó sus determinaciones de hecho y conclusiones de derecho para arribar a su determinación. Conviene mencionar, además, que, en el dictamen apelado, el foro primario consignó que la parte con interés, así como el CRIM fueron debidamente emplazados y, a tenor, le anotaba la rebeldía.[27]

---

[23] SUMAC TPI, a la Entrada Núm. 25.
[24] *Íd.*, a la Entrada Núm. 26.
[25] Ley Núm. 107, *supra*, 21 LPRA sec. 7183.
[26] SUMAC TPI, a la Entrada Núm. 27
[27] Puntualizamos que conforme se desprende del SUMAC TPI, a la Entrada Núm. 16, previamente el foro *a quo* le había anotado la rebeldía al CRIM. Nos llama la atención que, según reseñado, el emplazamiento por edicto fue publicado en tres

Puntualizamos que la *Sentencia* fue notificada al CRIM y a Carlos Porfirio Martínez Zayas, por correo postal.[28] Por otro lado, el Municipio fue notificado por conducto de su representante legal. No surge de los autos que se hubiese ordenado la notificación de la *Sentencia* por edictos para las partes con interés.

De ahí, el 18 de mayo de 2025, compareció el Municipio mediante un *Recurso de apelación* en el cual esgrimió la comisión del siguiente error:

> Erró el TPI al condicionar el traspaso de la propiedad expropiada a favor del Municipio de San Lorenzo a la consignación de $49,473.63, a pesar de que, en las expropiaciones municipales de propiedades declaradas estorbos públicos bajo el Código Municipal de Puerto Rico, el municipio no viene obligado a consignar dinero alguno hasta que él o los demandados comparezcan al tribunal conforme a la Regla 58.5 de Procedimientos Civil, evento procesal que no ha ocurrido en este caso.

Conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.[29] En consideración a lo anterior, luego de haber examinado la totalidad de los autos ante nos, hemos colegido eximir a la parte apelada de presentar escrito en oposición al recurso de revisión judicial ante nos.

---

ocasiones: (i) 22 de enero de 2026; (ii) 29 de enero de 2026; y (iii) 5 de febrero de 2026. No obstante, la copia del emplazamiento y la demanda con sus anejos no fueron depositadas en el correo postal para ser remitida a las partes con interés hasta prácticamente seis (6) semanas después del último edicto publicado, en contravención a lo dispuesto en la Regla 58.4 (C)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 38.4. Entendemos que a esto se refirió el foro de instancia cuando esbozó en la *Orden* emitida y notificada el 26 de marzo de 2026, que no se daba por emplazada la parte con interés. Tampoco pudimos constatar del expediente judicial lo esbozado por el Municipio en su escrito presentado 14 de abril de 2026, cuando alegó publicaría nuevamente los edictos, ni orden al respecto, salvo la anotación de rebeldía a las partes con interés.

[28] Con relación al señor Carlos Porfirio Martínez Zayas, que figuró como parte con interés en la *Petición*, este fue notificado a una dirección que obra en los autos ante el foro de instancia, provista por el Municipio. Véase el SUMAC TPI, a la Entrada Núm. 2, Anejo 1.

[29] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág.15, 215 DPR __ (2025).

## II.

### A. Falta de jurisdicción por prematuro

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[30] Los tribunales adquieren jurisdicción por virtud de ley, por lo cual no pueden arrogársela, ni las partes pueden otorgársela.[31] Es norma reiterada en nuestro ordenamiento que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[32] Igualmente, nuestro Tribunal Supremo ha sido constante en expresar que las cuestiones relativas a la jurisdicción constituyen materia privilegiada.[33] De manera que, deben ser resueltas con preferencia, pues, incide directamente sobre el poder que tiene un tribunal para adjudicar las controversias.[34] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[35] De lo contrario, cualquier dictamen en los méritos será nulo y no podrá ejecutarse.[36] Es decir, una sentencia dictada sin jurisdicción por un tribunal es una sentencia nula en derecho y, por tanto, inexistente.[37]

Como corolario de lo anterior, el Tribunal Supremo de Puerto Rico ha desarrollado el principio de la justiciabilidad, el cual recoge una serie de doctrinas de autolimitación basadas en consideraciones jurisprudenciales que prohíben al foro judicial emitir opiniones consultivas.[38] Además, el aludido principio persigue

---

[30] *R&B Power, Inc. v. Junta de Subastas ASG,* 213 DPR 685, 698 (2024); *AAA v. UIA,* 199 DPR 638, 651-652 (2018).
[31] *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 296 (2016).
[32] *Peerless Oil v. Hnos. Torres Pérez,* 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007).
[33] *A.A.A. V. Union Abo A.A.A.,* 158 DPR 273, 279 (2002).
[34] *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019); *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 372 (2018).
[35] *R&B Power, Inc. v. Junta de Subasta ASG,* supra, a la pág. 698.
[36] *Bco. Santander v. Correa García,* 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación,* 171 DPR 46, 55 (2007).
[37] *Montañez v. Policía de P.R.,* 150 DPR 917, 921-922 (2000).
[38] El principio de justiciabilidad fue incorporado jurisprudencialmente a nuestro ordenamiento jurídico mediante el caso *ELA v. Aguayo,* 80 DPR 552, 595 (1958);

evitar emitir decisiones en casos en los cuales realmente no existe una controversia, o dictar una sentencia que no tendrá efectos prácticos sobre un asunto.[39] En ese contexto, un caso no es justiciable cuando: (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva, y (v) cuando se pretende promover un pleito que no está maduro.[40]

En nuestra función revisora, un recurso judicial es prematuro cuando el asunto del cual se trata no está listo para adjudicación; esto es, cuando la controversia no está debidamente delineada, definida y concreta.[41] Como ha pronunciado reiteradamente el Tribunal Supremo, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[42] Como tal, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[43]

Finalmente, conviene mencionar que la Regla 83 del Reglamento del Tribunal de Apelaciones,[44] confiere facultad a este Tribunal para a iniciativa propia, o a petición de parte, desestimar un recurso o denegar un auto discrecional cuando este foro carece de jurisdicción.

---

Véase, además, R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Ed. Pubs. JTS, 1987, pág. 147.

[39] *Moreno v. Pres. U.P.R. I*, 178 DPR 969, 973 (2010).

[40] *Crespo v. Cintrón*, 159 DPR 290, 298 (2003).

[41] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Juliá et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366-367 (2001).

[42] *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a la pág. 365.

[43] *Torres Alvarado v. Madera Atiles,* supra, a la pág. 501; *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a la pág. 366.

[44] *In re Aprob. Enmdas. Reglamento TA*, supra, 2025 TSPR 42, pág. 110, 215 DPR __ (2025).

### III

En el recurso ante nuestra consideración, el Municipio ha comparecido ante nos tras su inconformidad con lo actuado con el foro de instancia cuando, a pesar de que concedió el remedio solicitado en la Petición de expropiación forzosa, le ordenó pagar una suma por concepto de justa compensación.

Ahora bien, como cuestión de umbral, este Tribunal viene llamado a auscultar su propia jurisdicción para atender un recurso. Con la finalidad de cumplir con esta encomienda, revisamos la totalidad de los autos ante nuestra consideración, así como los autos ante el foro de instancia a través del SUMAC TPI. Entonces, según hemos relatado, pudimos constatar varias fallas que merecen la atención del tribunal de instancia. Sin embargo, en estos momentos, esta Curia tiene ante su atención la revisión de una *Sentencia* en la cual las partes con interés fueron emplazadas mediante edicto, nunca comparecieron al pleito y el foro de instancia les anotó la rebeldía.

En nuestro ordenamiento jurídico es necesario que la notificación de las órdenes, resoluciones y sentencias emitidas por los tribunales se den de forma adecuada.[45] Nuestro más alto foro ha establecido que, al interpretar la Regla 65.3 de Procedimiento Civil,[46] surge claramente que una parte en rebeldía que haya sido emplazada por edicto y que nunca haya comparecido, "deberá ser notificada de la sentencia recaída en rebeldía por falta de comparecencia mediante la publicación de edictos."[47] En otras palabras, la notificación de la sentencia debe efectuarse de la misma forma en que se diligenció el emplazamiento.[48]

---

[45] *Berrios Fernández v. Vázquez Botet,* 196 DPR 245, 250 (2016); *Bco. Popular v. Andino Solís,* 192 DPR 172, 183 (2015).

[46] 32 LPRA Ap. V, R. 65.3.

[47] *Yumac Home v. Empresas Massó,* 194 DPR 96, 109 (2015).

[48] *Íd.,* a la pág. 110.

Dicho lo anterior, conviene mencionar que, en el presente caso, el foro de instancia dictó *Sentencia* en rebeldía, en lo atinente contra las partes con interés. Sin embargo, al momento de notificar la *Sentencia,* lo hizo utilizando el formulario OAT-1812 al señor Carlos Porfirio Martínez Zayas; al CRIM; al Lcdo. Héctor Alexis Dávila Gómez y al Municipio de San Lorenzo. En el caso del Municipio, le notificó por conducto de su representante legal a través del SUMAC TPI, mientras que al señor Martínez Zayas y al CRIM, le notificó a una dirección postal. En lo pertinente, la dirección a la cual se le notificó al señor Martínez Zayas fue una que como explicamos, fue informada por el Municipio.

Sin embargo, es claro que el foro *a quo* falló al notificar la *Sentencia* de esta forma. Lo anterior, pues, no existe duda de que las partes con interés fueron emplazadas -*correcta o incorrectamente*- por edicto, pero, más aún, habiéndose utilizado este mecanismo, nunca comparecieron en autos y no se les notificó la *Sentencia* por edicto, utilizando el formulario OAT-686. De hecho, el foro *a quo* omitió ordenar a la Secretaría a notificar la *Sentencia* por edicto.

Según señalamos previamente en nuestra exposición doctrinal, los tribunales están obligados a ser "celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción allí donde no la tienen".[49] Ahora bien, es norma firmemente establecida que la notificación constituye una parte integral de toda actuación judicial, por consiguiente, para que una resolución u orden surta efecto," esta debe ser "notificada adecuadamente a las partes."[50] De este modo, cuando una resolución, orden o sentencia no es notificada conforme a derecho, la misma "no surte efecto y los términos no comienzan a transcurrir."[51] Asimismo, se ha reiterado

---

[49] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).
[50] *Bco. Popular v. Andino Solís,* supra, a la pág. 183.
[51] *Íd.*

que, una notificación correcta y oportuna constituye un requisito *sine qua non* para la revisión judicial.[52] En consecuencia, una notificación defectuosa de la sentencia torna prematuro el recurso presentado. Como ha pronunciado reiteradamente el Tribunal Supremo, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[53] Así pues, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[54]

Forzosa y mínimamente, este fatal error provoca que la *Sentencia* apelada no pueda ser objeto de revisión por este Tribunal, al menos en estos momentos. A tenor, y conforme a nuestra Regla 83(C),[55] procede desestimar el recurso por haberse presentado de forma prematura. Lo anterior no limita que, notificada de forma correcta la *Sentencia* y luego de los trámites de rigor, la parte que así lo estime pueda acudir ante nos y solicitar el remedio que estime.

Por último, conviene recordar que el Tribunal, lo cual incluye a sus funcionarios, debe mantener especial atención al cumplimiento con las reglas procesales y a las directrices administrativas sobre notificación, pues, como bien expusimos, ello asegura el debido proceso de ley que ampara a las partes. Además, la supervisión constante de la Secretaría del Tribunal, al momento de notificar las determinaciones judiciales, resulta esencial para evitar que situaciones como la antes descrita se repitan. De esta manera, se promueve una gestión más eficiente y se evita la duplicación de esfuerzos y gastos innecesarios a los ciudadanos que acuden a nuestros tribunales.

---

[52] *Bco. Popular v. Andino Solís*, supra, a la pág. 183.

[53] *Juliá et al. v. Epifanio Vidal, S.E.*, supra, a la pág. 365.

[54] *Torres Alvarado v. Madera Atiles*, supra, a la pág. 501; *Juliá et al. v. Epifanio Vidal, S.E.*, supra, a la pág. 366.

[55] *In re Aprob. Enmdas. Reglamento TA*, supra, 2025 TSPR 42, pág. 110, 215 DPR __ (2025).

IV

Por los fundamentos que anteceden, se *desestima* el recurso incoado por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones